**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANDRE NANCE, | : |
| Plaintiff, | : Civ. No. 17-6409 (FLW) (LHG) |
| v. | : |
| | : **MEMORANDUM AND ORDER** |
| SCO. FRANCIS DANLEY *et al.*, | : |
| Defendants. | : |

Plaintiff Andre Nance ("Plaintiff") is proceeding *pro se* with this civil rights action filed under 42 U.S.C. § 1983. This matter has been opened to the Court by the parties supplemental submissions, *see* ECF Nos. 46-48, addressing whether Plaintiff properly exhausted his federal claims under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). For the reasons explained below, the Court denies without prejudice the motion for summary judgment on the issue of exhaustion and will permit Defendants SCO. Francis Danley ("Danley"), Sgt. Richard DeFazio ("DeFazio"), and Sgt. Sean Patterson ("Patterson") (collectively, "the Moving Defendants") to file a new summary judgment motion on exhaustion and/or the merits of Plaintiff's federal claims within 45 days of the date of this Memorandum and Order.

Moving Defendants previously sought summary judgment on Plaintiff's federal and state law claims under Federal Rule of Civil Procedure 56. ECF No. 37. On June 5, 2019, the Court granted summary judgment to the Moving Defendants as to Plaintiff's state law tort claims, but terminated the summary judgment motion as to Plaintiff's remaining federal claims because the Court could not resolve the threshold issue of whether Plaintiff properly exhausted administrative remedies under the PLRA. The Court notified Plaintiff that it intended to resolve the factual issues surrounding administrative exhaustion and directed the parties to supplement

1

the record.[1]  *See* ECF Nos. 42-43.  On August 5, 2019, Moving Defendants filed their supplemental brief and exhibits in further support of their argument that Plaintiff failed to exhaust his administrative remedies.  ECF No. 46.  On September 4, 2019, Plaintiff filed his supplemental brief and exhibits opposing summary judgment on the issue of exhaustion.  On September 19, 2019, Moving Defendants submitted their reply brief.  ECF No. 48.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015).  The exhaustion requirement is mandatory and, thus, bars an inmate from bringing such a claim without first properly exhausting available administrative remedies.  *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 85, 93–94 (2006).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

Failure to exhaust administrative remedies is an affirmative defense, which the defendant bears the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).  "Furthermore, the defendant must prove that the prisoner-plaintiff failed to exhaust *each* of his claims.  There is no 'total exhaustion' rule permitting

---

[1] In *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Third Circuit held that "some form of notice to the parties and an opportunity to respond are needed before a district court elects to resolve factual disputes regarding exhaustion."  *Id.* at 211.

dismissal of an entire action because of one unexhausted claim." *Small v. Camden County*, 728 F.3d 265, 269 (3d Cir. 2013) (emphasis added); *see also Jones*, 549 U.S. at 219–24.

For purposes of this motion, it appears undisputed that the 2016 NJSP Inmate Handbook ("Inmate Handbook") was in effect on October 13, 2016, the date of the alleged incident in this case. *Id.* at ¶ 10; *see also* ECF No. 46-4, Exhibit I. It is also undisputed that the inmate remedy system described in the Inmate Handbook is the mechanism for the inmate population to submit complaints, questions, concerns, problems, and/or grievances to the prison administration for resolution. *See id.* at ¶ 11.

The Inmate Handbook states that "[i]nmates are required to utilize and exhaust the Inmate Grievance Form and Appeal process before applying to the courts for relief." *See* Exhibit I at 2. There are two general types of Inmate Remedy Forms, and the Inmate Handbook distinguishes between the two types as follows: "The **Inmate Inquiry Form** is intended to make routine inquiries and obtain information. The **Inmate Grievance Form** is an internal administrative means for the resolution of complaints associated with the conditions of an inmate's confinement." *See id.* (emphasis in original).

The Inmate Handbook provides detailed instruction for submitting non-electronic, *i.e.*, paper, Inmate Remedy Forms under the headings "Specific Guidelines for Submitting Inmate Remedy System Forms[]" and "Completing the Inmate Remedy Form[.]" *See id.* at 3-4. The paper Inmate Remedy Forms have four designated sections for inmate and administrative use and have three sheets: a top white copy, a middle yellow copy, and a bottom pink copy. *See id.* at 3. When filling out the initial grievance, the white and yellow copies are not to be separated and the pink copy is to be retained by the inmate. *See id.* As set forth in the Inmate Handbook,

the yellow copy, which is returned to the inmate with the staff response, is used by the inmate to appeal an unsatisfactory decision.[2]

In addition to the paper Inmate Remedy Forms, "[t]he JPAY system allows inmates to submit inquiries and grievances electronically via the unit kiosk. Responses will be received through the kiosk and appeals are able to be made through the same." *See* Exhibit I, Inmate Handbook at 2. As further explained in the Inmate Handbook, Inmate Remedy Forms "will be available electronically in the Kiosk (Refer to Instructions JPAY Flyer on all Units)." *See id.* Moving Defendants have not provided a copy of the JPAY Flyer that was in effect during the

---

[2]The Inmate Handbook lays out a detailed process for appeal in connection with the paper Inmate Remedy Forms:

> **Remedy Appeal Process**:
>
> 1. Inmates may appeal a staff response using the returned answered yellow copy of the ***Inmate Grievance Form***.
>
> 2. After the form has been returned to the inmate, if he is dissatisfied with the response, he may file an appeal by completing Part 4 on the yellow colored copy within 10 days of receipt of the response.
>
> 3. The inmate must re-deposit the originally-answered ***Inmate Grievance Form*** in the box marked "INMATE REMEDY SYSTEM FORMS ONLY."
>
> 4. The Coordinator shall forward the appeal to the Administrator or Administrative designee after logging the date the appeal was returned on the form and into the database. The Administrator or administrative designee has 10 working days to answer the appeal, excluding weekends and holidays. Once the appeal is returned to the Coordinator, he/she will make a copy of the form for filing and return the inmate's original yellow colored copy with the appeal response.
>
> 5. The decision or finding of the Administrator or designee to the Administrative Appeal is the final level of review and decision or finding of the New Jersey Department of Corrections.

*See id.* at 4.

relevant time period, and there are no additional facts in the record explaining how an inmate submits and appeals a grievance through the JPAY system.

Based on the record evidence, it appears that Plaintiff submitted his grievance(s) about the relevant incident through the electronic JPAY system, as authorized by the Inmate Handbook, and did not use the paper Inmate Remedy Forms.

On October 29, 2016, Plaintiff submitted the following Inmate Remedy Form:

> [O]n 10-13-16,1 was assau[l]ted by officer DANIEL under the supervision of [S]gt. [S] PATTERSON and [S]gt. DEFAZIO[.]  I suffered damage to my ribs and right calf and intend on pursuing criminal as well as civil charges on said parties.  I ask that a[n] Investigation be conducted and I be Interviewed.

ECF No. 47, at 7.  On November 2, 2016, Kevin Koch ("Mr. Koch") responded as follows: "You will be interviewed by members of my staff" and closed the grievance.  *See id.*

On November 17, 2016, Plaintiff submitted another Inmate Remedy Form, stating that he "would like to know status of assault Investigation that happened to me on 10-13-2016[.]" *See id.* at 8.  On December 5, 2016, Mr. Koch responded but appears to misconstrue Plaintiff's request, stating: "Who did you assault?" *Id.*  Plaintiff responded as follows: "I was never charged with assault[.]  I was [t]he one that was assaulted on 10-13-16, by C.O. DANLY, C.O. DANIEL, AND there [sic] conspirators, SGT. DEFAZIO, and SGT. PATTERSON[.]" *Id.*  On December 12, 2016, Koch responded, "investigation is ongoing" and closed the matter.  *See id.*

On November 20, 2016, Plaintiff submitted another Inmate Remedy Form:

> [I] would like to reappeal [sic] whatever decision was made regarding my assault complaint which happened on the 13th of [O]ctober 2016.  I am still being harassed by not being fed all of my meals, so Im [sic] exhausting my grievances [sic] by way of the P .L.R. ACT.  Obviously whatever remedy has been decided on has not made a difference in deciding whether or not these officers decide to violate my constitutional, civil, and human rights.

*See id.* at 9.  The reference number for this Inmate Remedy Form is 268256 and the form type is listed as "Inquiry", but there is a note in Administrative Log entered by Chellsea Tessein ("Ms. Tessein"), stating the following: "Changed form to: Inquiry[.]"  Like Mr. Koch, Ms. Tessein also appears to misconstrue Plaintiff's request to "reappeal" his earlier grievance in her response: "You cannot use JPay Inmate Inquiry Forms/ Inmate Grievance Form for DOC disciplinary charges or DOC disciplinary charge appeals."[3]

On December 2, 2016, Plaintiff submitted another Inmate Remedy Form, which stated as follows: "I submitted an Inquiry form on 11-17-16, concerning an assault complaint that happened to me on 10-13-16, as to the status of the Investigation.  [M]y Inquiry is overdue and I would like to know the status of the Investigation.  *Id.* at 10.  On December 28, 2016, Mr. Koch responded as follows: "Investigation results are not disclosed."  *See id.*  The Administrative Log contains a note from Ms. Tessein dated December 6, 2016, stating: "Changed form to: Inquiry[.]"  *See id.*

On December 26, 2016, Plaintiff also filed an electronic grievance regarding the alleged failure to provide him with medical treatment for his ribs after the October 2016 assault.  *See* ECF No. 47-7, Exhibit L at 2.  This grievance does not mention the officers who allegedly assaulted Plaintiff or seek any redress for the assault itself.  *See id.*  On January 9, 2017, Susan Springler responds to the grievance, stating that Plaintiff had refused treatment, and, on January 12, 2017, Plaintiff responded that he did not refuse treatment.  *See id.*  There is a notation in the

---

[3] There is no mention of disciplinary charges in Plaintiff's submission, and it is not clear why Ms. Tessein believed Plaintiff sought to appeal such charges.

Administrative Log stating, "Case Appealed[]" and a subsequent notation stating, "Appeal Closed."[4]  *See id.*

The parties appear to agree that New Jersey State Prison's inmate remedy system is an "administrative remedy" system under the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a); *see generally* Plaintiff's Opposition, p. 3-4.  However, the parties dispute whether Plaintiff properly exhausted his administrative remedies.  Based on the record, Moving Defendants argue that Plaintiff failed to exhaust his administrative remedies because he did not appeal any of the grievances seeking redress for the assault itself.  Plaintiff asserts that he filed multiple Inmate Remedy Forms and appealed through Inmate Remedy Form 268256, which is dated November 20, 2016.  *See* Plaintiff's Supplemental Opposition at 6.

As the Court of Appeals for the Third Circuit has explained, "PLRA exhaustion turns on the remedies and grievance procedures that the particular prison has available." *Rinaldi v. United States*, 904 F.3d 257, 272 (3d Cir. 2018).  Here, Moving Defendants have not met their burden to show Plaintiff failed to exhaust because they have not provided the procedures for exhausting <u>electronic</u> Inmate Remedy Forms or shown that such procedures exist.  *See Ross v. Blake*, 136 S.Ct. at 1862  (remanding for further consideration of whether Blake had "available" remedies to exhaust where the Maryland procedures for exhaustion were unclear).

Although Moving Defendants have provided the relevant Inmate Handbook, which contains detailed instructions for filing <u>paper</u> Inmate Remedy Forms, the Inmate Handbook does not provide specific instructions for filing <u>electronic</u> Inmate Remedy Forms, and the Moving Defendants have not provided the JPAY Flyer, which is referenced in the Inmate Handbook, or

---

[4] It is unclear whether prison officials determine whether an inmate's submission is an appeal or if the inmate designates the form as an appeal.

any other documents that explain the process of filing and appealing Inmate Remedy Forms through the JPAY system.

Furthermore, on the record provided, the Court questions whether administrative remedies were available to Plaintiff in this instance. Although exhaustion is mandatory under the PLRA, the statute also contains "a textual exception" to mandatory exhaustion. *See Ross v. Blake*, 136 S.Ct. 1850, 1858 (U.S. 2016). "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *See id.* In *Ross v. Blake*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 1859. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 736 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 1850. "And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See id.*

Here, it is clear that Plaintiff filed several Inmate Remedy Forms regarding the October 2016 assault. In this regard, the Court notes that Mr. Koch and Ms. Tessein misconstrued Plaintiff's submissions, and Ms. Tessein changed several of his Inmate Remedy Forms to inquiries, including the Inmate Remedy Form in which Plaintiff purportedly seeks to appeal the

outcome of the investigation into the assault. Moving Defendants have not sufficiently addressed these issues in the context of the relevant law on exhaustion.

For these reasons, the Court will deny without prejudice the motion for summary judgment as to exhaustion. At this time, the Court will provide Moving Defendants with 45 days to inform the Court as to whether they seek to refile their motion for summary judgment on exhaustion and/or the merits of Plaintiff's federal claims.[5]

To the extent Moving Defendants still seek summary judgment <u>on the merits</u> of Plaintiff's federal claims, they must provide additional evidence and analysis addressing whether Plaintiff's excessive force claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641, 646–47 (1997). In *Heck*, the Supreme Court held that a prisoner may not pursue a § 1983 action which necessarily impugns the validity of the conviction or duration of sentence, unless first demonstrating that the conviction or sentence has already been invalidated. *Heck*, 512 U.S. at 486–87. The Court later extended *Heck's* "favorable termination" rule to prison disciplinary sanctions that alter the duration of a prisoner's term of incarceration. *Edwards*, 520 U.S. at 646–48. The rule does not, however, bar a prisoner from bringing an action which does not implicate <u>the fact or duration of confinement</u>. *See Muhammad v. Close*, 540 U.S. 749, 751 (2004); *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006). As clarified by the Supreme Court in *Muhammed v. Close*, 540 U.S. at 751 n.1, the sentence that matters for *Heck* is the sentence ordered by the original judgment of conviction, and not the disciplinary sentence. *See id.* In order to succeed on their summary judgment motion, Moving Defendants must address whether the disciplinary sentence imposed <u>necessarily affects</u>

---

[5] To the extent Moving Defendants re-raise exhaustion and fail to provide an adequate record or address the issues described in this Memorandum and Order, the Court may sua sponte determine that an evidentiary hearing is required.

Plaintiff's underlying conviction or sentence. Moving Defendants shall also provide the written transcript from Plaintiff's disciplinary hearing and any other relevant documentation showing the disciplinary sanctions imposed and whether these sanctions necessarily impugn the validity of Plaintiff's underlying conviction or sentence.

Finally, to the extent Moving Defendants separately argue that Plaintiff is collaterally estopped from arguing facts that are inconsistent with his disciplinary proceeding, they are free to present such arguments and analysis in their new motion for summary judgment.

At this time, the Court will also **ADMINISTRATIVELY TERMINATE** this matter, to be reopened for adjudication once the record is complete.[6]

**IT IS THEREFORE**, on this 28thday of September 2020,

**ORDERED** that Defendants motion for summary judgment is denied **WITHOUT PREJUDICE** on the issue of exhaustion under the PLRA; and it is further

**ORDERED** that within 45 days of the date of this Memorandum and Order, Defendants shall notify the Court as to whether they seek to refile their motion for summary judgment on exhaustion and/or the merits of Plaintiff's federal claims; and it is further

---

[6] Plaintiff is informed that administrative termination is not a "dismissal," and that the Court retains jurisdiction over his case. *See Papotto v. Hartford Life & Acc. Ins. Co.*, 731 F.3d 265, 275 (3d Cir. 2013) (distinguishing administrative terminations from dismissals). "Dismissals end all proceedings, at which time the district court relinquishes any jurisdiction over the matter. . . . By contrast, administrative closings do not end the proceeding. Rather, they are a practical tool used by courts to 'prune . . . overgrown dockets' and are 'particularly useful in circumstances in which a case, though not dead, likely to remain moribund for an appreciable period of time.'" *Id.* (citing *Freeman v. Pittsburgh Glass Works*, LLC, 709 F.3d 240, 247 (3d Cir. 2013) (internal quotation marks omitted); *see also Lehman v. Revolution Portfolio, LLC*, 166 F.3d 389, 392 (1st Cir. 1999) ("Administrative closings comprise a familiar, albeit essentially *ad hoc*, way in which courts remove cases from their active files without making any final adjudication.").

**ORDERED** that if Moving Defendants seek to refile their motion for summary judgment, they must submit a new motion for summary judgment, statement of undisputed material facts, and exhibits, as described in this Memorandum and Order, within 45 days; and it is further

**ORDERED** that within 45 days of his receipt of the new motion for summary judgment, Plaintiff shall file his opposition brief, his responsive statement of material facts, and any relevant exhibits; and it is further

**ORDERED** that within 10 days of their receipt of Plaintiff's opposition papers, Moving Defendants may file their reply brief; and it is further

**ORDERED** that the Clerk of the Court shall **ADMINISTRATIVELY TERMINATE** this case at this time; and it is further

**ORDERED** that the Court will reopen this matter for adjudication once the record is complete; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge