UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANDRE NANCE,

    Plaintiff,

v.

SCO. FRANCIS DANLEY *et al.*,

    Defendants.

Civ. No. 17-6409 (FLW) (LHG)

**MEMORANDUM & ORDER**

Plaintiff Andre Nance ("Plaintiff" or "Nance") is proceeding *pro se* with this civil rights action filed pursuant to 42 U.S.C. § 1983. The Court previously denied <u>without prejudice</u> summary judgment on administrative exhaustion and permitted Defendants SCO Francis Danley ("Danley"), Sgt. Richard DeFazio ("DeFazio"), and Sgt. Sean Patterson ("Patterson") (collectively, "the Moving Defendants") to refile their summary judgment motion addressing whether Plaintiff properly exhausted his federal claims under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) and on the merits.[1] Moving Defendants filed a second summary judgment motion, ECF No. 53, on PLRA exhaustion and the merits. For the reasons explained in this Memorandum and Order, the Court finds that it is unable to resolve the issue of whether administrative remedies were available to Plaintiff. At this time, the Court will *sua sponte* appoint pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1) for the limited purpose of 1) representing Plaintiff on the issue of PLRA exhaustion and 2) the potential settlement of Plaintiff's excessive force claims. In light of these rulings, the Court will administratively

---

[1] The Court granted summary judgment to moving Defendants on the state law tort claims.

1

terminate the summary judgment motion and this matter until appointed counsel enters an appearance and the parties submit their briefing.

The Court provides the following legal and factual background to explain its decision to appoint counsel. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). The exhaustion requirement is mandatory and, thus, bars an inmate from bringing such a claim without first properly exhausting available administrative remedies. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 85, 93–94 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford,* 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. These deadlines and procedural rules are supplied by the individual prisons. *Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (determining whether "a prisoner has 'properly' exhausted a claim ... is made by evaluating the prisoner's compliance

2

with the prison's administrative regulations governing inmate grievances"); *see also Downey v. Pennsylvania Department of Corrections*, 968 F.3d 299, 305 (3d Cir. 2020) (explaining same).

Although exhaustion is mandatory under the PLRA, the statute also contains "a textual exception" to mandatory exhaustion. *See Ross*, 136 S.Ct. at 1858. "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *See id.* In *Ross v. Blake*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 1859. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 736 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 1850. "And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See id.* In addition, the Third Circuit has held that the failure to respond in accordance with the prison's procedural rules to a properly-filed grievance renders administrative remedies unavailable. *See Robinson v. Superintendent Rockview*, SCI, 831 F.3d 148, 154 (3d Cir. 2016).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense, which the defendant bears the burden to plead and prove. *Jones*, 549 U.S. at 216. Once a defendant has established that the inmate failed to resort to administrative remedies, the onus

falls on the inmate to show that such remedies were unavailable to him. *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).

As the Court of Appeals for the Third Circuit has explained, "PLRA exhaustion turns on the remedies and grievance procedures that the particular prison has available." *Rinaldi*, 904 F.3d at 272. Within the New Jersey Department of Corrections ("NJDOC"), "[t]he comprehensive Inmate Remedy System, includes an 'Inmate Inquiry Form,' and/or 'Inmate Grievance Form,' and an 'Administrative Appeal,' which must be utilized and fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, and/or complaints." *See Concepcion v. Morton*, 306 F.3d 1347, 1355–55 (3d Cir. 2002) (citing N.J.A.C. 10A:1–4.4). These requirements also appear in the NJPS Inmate Handbook. *Id.* (holding that the PLRA's exhaustion requirement applies to the grievance procedures set forth in the inmate handbook).

Here, the parties agree that New Jersey State Prison's inmate remedy system is an "administrative remedy" system under the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a), but the parties dispute whether remedies were available to him through the NJDOC's electronic JPAY System, which was instituted in the 2015-2016 timeframe.[2] *See* Exhibit G, Declaration of Fathom Borg ("Borg Decl.") ¶ 3. It is undisputed that the 2016 NJSP Inmate Handbook ("Inmate Handbook") was in effect on October 13, 2016. *See* Exhibit I, Excerpts from 2016 Inmate Handbook. It is also undisputed that the Inmate Handbook requires prisoners "to utilize and exhaust the Inmate Grievance Form and Appeal process before applying to the courts for relief." *Id.* at 2. The 2016 Inmate Handbook also explicitly permits the filing of Inmate Remedy

---

[2] The exhibits referenced are those attached to Moving Defendants' renewed motion for summary judgment, *i.e.*, ECF No. 53.

4

Forms and appeals through the JPAY system: "The JPAY system allows inmates to submit inquiries and grievances electronically via the unit kiosk. Responses will be received through the kiosk and appeals are able to be made through the same." *See id.*

The Court previously found that Moving Defendants had not met their burden to show Plaintiff failed to exhaust under the PLRA because they did not provide the procedures for exhausting <u>electronic</u> Inmate Remedy Forms through the JPAY System or show that such procedures exist.[3] *See Ross v. Blake*, 136 S.Ct. at 1862 (remanding for further consideration of whether Blake had "available" remedies to exhaust where the Maryland procedures for exhaustion were unclear); *see Hannah v. Administrator Albert C. Wagner Youth Correctional Facility*, No. 17-8066, 2020 WL 1864575, at *4 (D.N.J. Apr. 14, 2020) (denying summary judgment on exhaustion and noting that Defendants had not "even explained how one appeals on the JPAY kiosk").

Defendants have now provided the "JPAY Poster," which was displayed within NJDOC during the relevant time period. *See* Exhibit M, Declaration of Robert S. Biluck ("Biluck Decl.") ¶¶ 1-7; Exhibit N. The JPAY Poster explains how to create a JPAY account, file a grievance through the JPAY System, and check back for responses. Biluck Decl. ¶¶ 13-16; *see also* Exhibit N. The JPAY Poster does not, however, explain how to appeal grievances through the JPAY system. *See* Exhibit N. To fill that gap, Moving Defendants have also providing the Borg Declaration, which states that the procedure for filing and appealing grievances through the JPay

---

[3] Although Moving Defendants provided the relevant Inmate Handbook, which contains detailed instructions for filing <u>paper</u> Inmate Remedy Forms, the Inmate Handbook did not provide specific instructions for filing <u>electronic</u> Inmate Remedy Forms, and the Moving Defendants did not provide the JPAY Flyer, which is referenced in the Inmate Handbook, or any other evidence explaining the process for filing and appealing Inmate Remedy Forms through the JPAY system.

5

System is "essentially identical" to the paper procedure. *See* Borg Decl. ¶¶ 8, 16-20. Moving Defendants do not, however, provide the specific instructions for filing grievances or appeals through the JPay System, *i.e.*, screen shots of the instruction from the JPAY System or other detailed explanation. Thus, the procedures for exhausting inmate grievances through the JPay System are still somewhat unclear.

Moreover, the Court remains concerned that the mishandling of Plaintiff's grievances rendered remedies unavailable to him in this instance. In response to Plaintiff's initial and most detailed grievance about the alleged assault on October 13, 2016, a staff member informed Plaintiff that an investigation would be conducted and Plaintiff would be interviewed.[4] This response did not resolve Plaintiff's grievance, and Plaintiff did not appeal this response within the 10-day period. He did, however, follow up with two grievances and an inquiry to find out the results of the investigation, and these follow up submissions were misconstrued by staff members. A staff member also changed both of Plaintiff's grievances regarding the investigation

---

[4] On October 29, 2016, Plaintiff submitted Grievance # 249398:

> [O]n 10-13-16, I was assau[l]ted by officer DANIEL under the supervision of [S]gt. [S] PATTERSON and [S]gt. DEFAZIO[.] I suffered damage to my ribs and right calf and intend on pursuing criminal as well as civil charges on said parties. I ask that a[n] Investigation be conducted and I be Interviewed.

Exhibit J at 2. On November 2, 2016, Kevin Koch ("Mr. Koch") responded as follows: "You will be interviewed by members of my staff" and closed the grievance. *See id.*

6

to inquiries,[5] and it is not clear that inquires can be appealed through the electronic JPay System or otherwise.[6]

Appointment of counsel under 28 U.S.C. § 1915(e)(1) may be made at any point in the litigation and may be made by the Court *sua sponte*. *See Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993). At this time, in light of the unresolved issues regarding PLRA exhaustion and Plaintiff's *pro se* status, the Court finds that it is appropriate to appoint counsel to represent Plaintiff for the limited purpose of determining whether administrative remedies were unavailable to Plaintiff—due to unclear JPAY System procedures and/or due to the mishandling of Plaintiff's grievances. Counsel is also appointed for the limited purpose of any potential settlement negotiations.

The Court will ADMINISTRATIVELY TERMINATE the motion for summary judgment at this time and will also ADMINISTRATIVELY TERMINATE this matter for docket

---

[5] On November 20, 2016, Plaintiff submitted Grievance # 268256, asking "to reappeal whatever decision was made regarding my assault complaint which happened on the 13th of [O]ctober 2016" and refers to exhaustion under the PLRA. Exhibit J at 2. Although the form type is listed as "Inquiry", there is a note in Administrative Log entered by Chellsea Tessein ("Ms. Tessein"), stating the following: "Changed form to: Inquiry[.]" Ms. Tessein then misconstrues Plaintiff's request to "reappeal" the outcome of his assault complaint, stating: "You cannot use JPay Inmate Inquiry Forms/Inmate Grievance Form for DOC disciplinary charges or DOC disciplinary charge appeals."

On December 2, 2016, Plaintiff submitted Grievance #239437, and wrote the following: "I submitted an Inquiry form on 11-17-16, concerning an assault complaint that happened to me on 10-13-16, as to the status of the Investigation. [M]y Inquiry is overdue and I would like to know the status of the Investigation. *Id.* at 9. On December 28, 2016, Mr. Koch responded as follows: "Investigation results are not disclosed." *See id.* The Administrative Log contains a note from Ms. Tessein dated December 6, 2016, stating: "Changed form to: Inquiry[.]" *See id.*

[6] There are two general types of Inmate Remedy Forms, and the Inmate Handbook distinguishes between the two types as follows: "The **Inmate Inquiry Form** is intended to make routine inquiries and obtain information. The **Inmate Grievance Form** is an internal administrative means for the resolution of complaints associated with the conditions of an inmate's confinement." *See* Exhibit I at 2. (emphasis in original).

7

management purposes until counsel is appointed and supplemental briefing is completed. Once Counsel enters an appearance, the Court will set a schedule for supplemental briefing.[7]

**IT IS, THEREFORE**, on this 23rd day of June 2021,

**ORDERED** that the Clerk of the Court shall mark this matter as **OPEN**; and it is further

**ORDERED** that pursuant to the Court's *sua sponte* authority under *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993), the Court requests an attorney to represent Plaintiff pro bono pursuant to 28 U.S.C. § 1915(e)(1), limited to the issue of whether administrative remedies were available to Plaintiff and to represent Plaintiff in any potential settlement of the excessive force claims against Moving Defendants; and it is further

**ORDERED** counsel shall enter an appearance in this matter within 30 days of his or her appointment; and it is further

**ORDERED** that in light of the appointment of counsel and for docket management purposes, the Court directs the Clerk of the Court to **ADMINISTRATIVELY TERMINATE** the summary judgment motion pending at ECF No. 53 and **ADMINISTRATIVELY TERMINATE** this matter pending the assignment of counsel; and it is further

**ORDERED** that the Court will set a briefing schedule once counsel is appointed and enters and an appearance and will reopen this matter for adjudication upon completion of the briefing; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Order to Plaintiff at the address on file.

---

[7] The Court will determine if a hearing is required once the parties submit their supplemental briefing. If necessary, the Court will consider whether counsel should continue the representation beyond the issues of PLRA exhaustion and potential settlement.

*s/Freda L. Wolfson*
Freda L. Wolfson
U.S. Chief District Judge