**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANDRE NANCE, | : | |
| Plaintiff, | : | Civ. No. 17-6409 (GC) (LHG) |
| | : | |
| v. | : | |
| | : | |
| SCO DELANEY, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

**CASTNER, District Judge**

### I.    INTRODUCTION

Plaintiff, Andre Nance ("Plaintiff" or "Nance"), is a state prisoner incarcerated at the New Jersey State Prison ("NJSP"), in Trenton, New Jersey. He is proceeding with a civil complaint raising excessive force claims against correctional officers. Presently pending is Defendants' SCO Delaney, SCO DeFazio and Sgt. Patterson (hereinafter the "Moving Defendants") Supplemental Motion for Summary Judgment for Plaintiff's failure to exhaust administrative remedies. (*See* ECF 70). In response to Moving Defendants' Motion, Plaintiff has filed a Cross-Motion for Summary Judgment asserting that he has exhausted his administrative remedies and/or that any such failure on his part to exhaust his administrative remedies should be excused because remedies were made "unavailable." (*See* ECF 81). For the following reasons, both motions are denied. This Court will schedule an evidentiary hearing to determine whether Plaintiff's administrative remedies were made "unavailable."

## II.    BACKGROUND

A. <u>Federal Court Proceedings</u>

Plaintiff initially filed his Complaint in the New Jersey Superior Court, Law Division Mercer County.  In August 2017, the Complaint was removed to this Court.  (*See* ECF 1).  In December 2017, Plaintiff filed an Amended Complaint.  (*See* ECF 8).

The factual allegations giving rise to Plaintiff's Amended Complaint stem from an incident occurring at NJSP on October 13, 2016.  Plaintiff asserted Moving Defendants used excessive force against him thereby violating his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff also raised claims under state law for assault and battery.  Plaintiff sought monetary damages as relief in his Amended Complaint.

Moving Defendants filed an Answer to the Amended Complaint in January 2018.  (*See* ECF 10).  In November 2018, Moving Defendants filed a Motion for Summary Judgment, which contained five arguments, namely:

1.  Plaintiff's federal claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994);

2.  Moving Defendants are entitled to summary judgment on Plaintiff's state law claims because he failed to comply with the presentation requirements of the New Jersey Tort Claims Act ("NJTCA");

3.  Plaintiff's federal claims must be dismissed because he failed to exhaust administrative remedies;

4.  Moving Defendants are entitled to summary judgment because Plaintiff cannot satisfy the elements of an Eighth Amendment excessive force claim; and

5.  Moving Defendants are entitled to summary judgment on Plaintiff's claim for compensatory damages because his injuries were no more than *de minimus*.

2

(*See* ECF 37).

In June 2019, the Court granted Moving Defendants' Motion for Summary Judgment in part. (*See* ECF 42 & 43). More specifically, the Court dismissed Plaintiff's state law claims as Plaintiff failed to file a timely notice of tort claim. (*See* ECF 42 at 6-7 & ECF 43). Nevertheless, the Court determined that factual issues remained with respect to whether Moving Defendants were entitled to summary judgment on Plaintiff's federal claims due to a purported lack of administrative exhaustion. (*See* ECF 42 at 7-11). The Court also put the parties on notice pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), that it intended to resolve the threshold question of administrative exhaustion pursuant to the Court's role as a fact-finder on the administrative exhaustion issue. (*See* ECF 42 at 10-11).

Subsequently, Moving Defendants filed a Supplemental Brief on the administrative exhaustion issue. (*See* ECF 46). Plaintiff filed a *pro se* Response in Opposition (*see* ECF 47) and Moving Defendants then filed a Reply in Support of their Supplemental Brief. (*See* ECF 48). In September 2020, the Court denied without prejudice Moving Defendants' Motion for Summary Judgment on the administrative exhaustion question.   (*See* ECF 49).  In denying the Motion without prejudice, the Court noted that Moving Defendants failed to provide sufficient information related to filing an administrative grievance electronically using NJSP's JPAY electronic kiosk system. (*See id.*). The Court though permitted Moving Defendants to refile a motion for summary judgment on administrative exhaustion.

In November 2020, Moving Defendants filed a Second Motion for Summary Judgment. (*See* ECF 53). In addition to including arguments related to a lack of administrative exhaustion, Moving Defendants re-raised points 1, 4 and 5 of their initial Motion for Summary Judgment filed in November 2018.

On June 23, 2021, the Court appointed Plaintiff counsel *sua sponte* for the limited purpose of representing Plaintiff on the administrative exhaustion issue. (*See* ECF 61). The Court then administratively terminated Moving Defendants' Second Motion for Summary Judgment. (*See id.*).

After appointed counsel entered an appearance on Plaintiff's behalf, Moving Defendants filed a Supplemental Motion for Summary Judgment on the administrative exhaustion issue on March 30, 2022. (*See* ECF 70). On July 11, 2022, Plaintiff, through counsel, filed a Cross-Motion for Summary Judgment on the administrative exhaustion issue. (*See* ECF 81). On August 17, 2022, Moving Defendants filed a Reply in Support of their Supplemental Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment. (*See* ECF 86).

B. Plaintiff's Administrative Filings

Because this opinion relates solely to administrative exhaustion, Plaintiff's administrative filings as they relate to the purported October 13, 2016 excessive force incident are important to determine whether he exhausted his administrative remedies, and/or, if he has not, whether administrative exhaustion should be excused because such remedies were rendered "unavailable." Plaintiff's relevant administrative filings contained in this record are summarized below.

On October 29, 2016, Plaintiff submitted a grievance using the electronic JPAY kiosk indicating that he had been assaulted and suffered injuries by officer "Daniel" under the supervision of Sgt. Patterson and Sgt. DeFazio on October 13, 2016. (*See* ECF 81-4 at 2). He requested an investigation and that he be interviewed. (*See id.*). On November 2, 2016, Kevin Koch responded to Plaintiff's grievance that he would be interviewed and closed the grievance. (*See id.*).

On November 17, 2016, Plaintiff submitted an administrative inquiry using the electronic JPAY kiosk. (*See* ECF 81-5 at 2). Kevin Koch responded to the inquiry and asked Plaintiff, "[w]ho did you assault?" (*See id.*). Plaintiff responded that he was not charged with assault but was in fact the one assaulted by "C.O. Daniel" and co-conspirators Sgt. DeFazio and Sgt. Patterson. (*See id.*). Koch then responded that the "[i]nvestigation is ongoing" and closed the inquiry. (*See id.*).

On November 20, 2016, Plaintiff submitted a grievance using the electronic JPAY kiosk stating as follows:

> would like to reappeal whatever decision was made regarding my assault complaint which happened on the 13th of October 2016. I am still being harassed by not being fed all of my meals[ ], so i[']m exhausting my grievances by way of the P.L.R. ACT. Obviously whatever remedy has been decided on has not made a difference in deciding whether or not these officers decide to violate my constitutional, civil, and human rights.

(*Id.*). On December 14, 2016, prison staff member Chellsea Tessein changed Plaintiff's administrative filing from a grievance to an inquiry.[1] (*See id.*). On December 22, 2016, Tessein closed this newly labeled inquiry stating to Plaintiff, "[y]ou cannot use JPAY Inmate Inquiry Forms/Inmate Grievance Form for DOC disciplinary charges or DOC disciplinary charge appeals." (*See id.*).

On December 2, 2016, Petitioner submitted an administrative filing via JPAY stating as follows, "I submitted an inquiry form on 11-17-16, concerning an assault complaint that happened to me on 10-13-16, as to the status of the investigation. [M]y inquiry is overdue and I would like to know the status of the investigation." (*See* ECF 81-7 at 2). On December 6, 2016, Tessein

---

[1] Moving Defendants concede "prison staff" changed this administrative filing from a grievance to an inquiry. (*See* ECF 70 at 28).

again changed Plaintiff's filing to an inquiry.  (*See id.*).  On December 28, 2016, Kevin Koch

responded that "[i]nvestigation results are not disclosed," and closed the inquiry.  (*See id.*).

On December 26, 2016, Plaintiff submitted another inmate grievance via the electronic

JPAY kiosk.  In this filing, Plaintiff asserted as follows:

> I was assaulted on 10-13-2016.  [M]y ribs were damaged on the left
> side of my body.  I was never treated for my ribs that are still hurting
> me today.  [A]n x-ray was taken in the month of NOV, 2016, but
> that was for my lungs.  [M]y rib cage is protruding from my body
> abnormally on the left side, which [was] caused by my being
> assaulted on that day.  I was never giving [sic] a proper diagnoses
> [sic] nor treatment for my ribs.  I was called down to medical on 11-
> 9-16, and was told that the protrusion was bone, which I already
> knew.  I was not told whether or not my ribs are bruised, fractured,
> or broken.  [O]nce again I would like to request a check-up, a x-ray,
> and treatment of my ribs.

(ECF 81-10 at 2).  On January 9, 2017, Susan Spingler responded to this grievance stating, "[y]ou

were seen at the time of the incident.  You refused an xray.  Please submit a sick call form if you

continue to have concerns."  (*See id.*).  Spingler then closed Plaintiff's grievance.  (*See id.*)  On

January 12, 2017, Plaintiff stated as follows under the same grievance, "never refused an xray

concerning my ribs because none was fourth [sic] coming.  [M]y ribs were never x[-]rayed only

my lungs.  I would appreciate being called to medical so that my ribs can be x[-]rayed."  (*See id.*).

Plaintiff wrote on the same day, "[c]ase appealed."  (*See id.*).  On January 20, 2017, Spingler

responded again stating, "[y]ou have been seen and evaluated on 1/18.  New orders for x[-]ray

have been ordered and you will be scheduled."  (*See id.*).  Spingler then closed Plaintiff's appeal.

(*See id.*).

On February 26, 2017, Plaintiff submitted an inquiry using the electronic JPAY kiosk

stating, "I[']ve submitted 2 law library request forms in the month of 2-2017, asking for law library

supplies, and to see paralegal HANNON, so that he can continue to assi[s]t me in my current legal

matters. I have [sic] neither request has been honored yet." (*See* ECF 81-8 at 2). On February 27, 2017, James Stansky responded to Plaintiff's inquiry as follows, "[a]ccording to the law library, you last received legal supplies on 2/10/17. The last G-27D form received from you was on 2/13/17 and you were last seen by paralegal Hannon on 2/18/17." (*See id.*). Stansky then marked the inquiry as closed. (*See id.*).

Finally, on March 6, 2017, Plaintiff submitted the following grievance via the electronic JPAY kiosk, "I submitted a law [ ] library slip, to see paralegal HANNON, on 2-24-17, and 3-5-17, so that he may continue to help me prepare a legal document. I have not seen him yet. [T]here is a deadline to how much time I have to submit this legal document. I would appreciate him being sent to me." (*See* ECF 81-9 at 2). Rakima Stokes-Little responded to this grievance also on March 6, 2017 stating "[p]er our records you were seen on Wednesday, March 1st by paralegal Hannon." (*See id.*). Stokes-Little then closed Plaintiff's grievance form. (*See id.*). On March 10, 2017, Plaintiff responded on the same grievance as follows, "per [ ] my record, and I do keep all of them/ I [w]as not seen by paralegal HANNON, THIS MONTH AT ALL, AND WOULD APPRECITE IT IF HE IS SENT [ ] TO ME BECAUSE I HAVE IMPORTANT LEGAL MATTERS TO GO OUT TO THE COURTS THAT HAVE DEADLINES COMING UP SOON." (*See id.*). Plaintiff also wrote "[c]ase appealed" on March 10, 2017. (*See id.*). On March 23, 2017, Steven Johnson responded to Plaintiff's appeal stating, "[y]ou were seen on 3/1 and 3/13 by Paralegal Hannon." (*See id.*). Johnson then closed Plaintiff's appeal. (*See id.*).

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing

law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents[,] affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

*Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## IV.    DISCUSSION

Moving Defendants argue they are entitled to summary judgment because Plaintiff failed to exhaust available administrative remedies. As discussed *infra*, neither party is entitled to summary judgment based on this record and an evidentiary hearing shall be scheduled to assess remaining issues of fact regarding whether administrative remedies were rendered "unavailable" to Plaintiff.

### A.    Administrative Exhaustion Generally

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 578 U.S. 632, 638 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by, Coleman v. Tollefson*, 575 U.S. 532 (2015). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross*, 578 U.S. at 638-39 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2007)). This includes constitutional claims, *Woodford*, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

Exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA,

but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)). A court may decide whether a plaintiff exhausted his administrative remedies without a jury even if there are disputed facts after providing notice to the parties and an opportunity to submit further evidence. *See Paladino*, 885 F.3d at 211 (3d Cir. 2018); *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013). The Court gave the parties the required *Paladino* notice to alert them that the Court intended to act in its role as fact-finder on the administrative exhaustion issue.

Although exhaustion is mandatory under the PLRA, the statute also contains "a textual exception" to mandatory exhaustion. *See Ross*, 578 U.S. at 642. "Under [42 U.S.C.] § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *See Ross*, 578 U.S. at 642. In *Ross*, the United States Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 643-44. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643 (citing *Booth v. Churner*, 532 U.S. 731, 736 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. "And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See id.* at 644.

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small*, 728 F.3d at 268. Once a defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him. *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).

B. NJSP Administrative Remedy System

The NJSP inmate handbooks contain information on the administrative remedy and grievance system, known as the Inmate Remedy System. (*See* ECF 53-2 ¶ 32). Inmate inquiries are intended to make routine requests and obtain information whereas inmate grievances are a means to resolve complaints with the conditions of an inmate's confinement. (*See id.* ¶ 36). Inmates can use the electronic JPAY system to submit inquiries and grievances electronically using a unit kiosk. (*See id.* at ¶ 35).

Inmates must use the inmate grievance and appeal process before seeking relief in the courts. (*See id.* at ¶ 37). The established response time is thirty days. (*See id.* ¶ 39). If an inmate is not satisfied with the response, he may appeal whereby the administrator or designee will render a decision on the appeal. (*See id.* ¶ 42). An inmate exhausts administrative remedies when he receives a response to his grievance appeal. (*See id.* ¶ 43).

Thus, an inmate at NJSP exhausts administrative remedies by filing a grievance, receiving a response to that grievance, and then appealing that response.

C. Moving Defendants' Arguments

Moving Defendants make several arguments to support their Supplemental Motion for Summary Judgment. First, Moving Defendants assert that Plaintiff's October 29, 2016 grievance did not exhaust his administrative remedies because he did not appeal the response to this

grievance.  Second, Moving Defendants argue that Plaintiff's November 20, 2016 and December 2, 2016 grievances also did not exhaust Plaintiff's administrative remedies.  More specifically, Moving Defendants claim that because Plaintiff filed these as new administrative filings, rather than as an appeal of his previous October 29, 2016 grievance, he did not exhaust his administrative remedies.  Furthermore, Moving Defendants state that Plaintiff did not appeal his November 20, 2016 and December 2, 2016 administrative filings, which, as indicated above, prison staff changed to inquiries rather than grievances.  Thus, Moving Defendants contend that these filings should not be deemed to have exhausted Plaintiff's administrative remedies on the excessive force claims raised in this federal civil action.

Next, Moving Defendants claim the grievances Plaintiff did appeal do not relate to the underlying excessive force claims related to this federal civil action.  For example, they note Plaintiff properly appealed a grievance submitted on December 26, 2016 seeking an X-ray for his injuries.  (*See* ECF 70 at 23).  Moving Defendants argue this grievance should not be construed as exhausting his administrative remedies on his excessive force claims because it failed to make any reference to an assault by an officer.  According to Moving Defendants, Plaintiff's March 6, 2017 grievance also did not exhaust the excessive force claims raised in this action.  They argue this grievance related to access to a paralegal and did not make reference to an assault by an officer to properly exhaust his administrative remedies related to the purported use of excessive force.

Having purportedly shown Plaintiff failed to exhaust by not properly appealing a grievance related to the alleged use of excessive force, Moving Defendants next claim Plaintiff has failed to show that the administrative remedy system was made "unavailable" to him.  Moving Defendants note the record indicates that Plaintiff was able to exhaust administrative remedies on other matters using the electronic JPAY kiosk as evidence that the inmate remedy system was readily available

and known to Plaintiff. (*See* ECF 70 at 26). Thus, Moving Defendants claim there is no indication

that the inmate remedy system was rendered "unavailable."

Finally, Moving Defendants assert Plaintiff failed to adduce any evidence that he was

thwarted or taken advantage of by prison administrators which would have made administrative

remedies "unavailable." More specifically, they note:

> Plaintiff did submit an inmate remedy form stated November 20,
> 2016 which was changed from an Inmate Grievance Form to an
> Inmate Inquiry Form by prison staff. Although prison staff
> converted this form from an inquiry to a grievance[2], there is no
> evidence that this was a product of machination, misrepresentation,
> or intimidation. Rather, Plaintiff's form referred to the same date of
> a guilty disciplinary adjudication, which seems to have caused
> confusion by the staff member responding to this form. To the
> extent Plaintiff may question the motive of the responding staff
> member, Plaintiff has not adduced evidence to meet his burden of
> showing machination, misrepresentation, or intimidation by staff.
> Given that Plaintiff exhausted administrative remedies for an Inmate
> Grievance Form approximately one month later, the Court should
> [not] view any arguments that the change rendered the system
> unavailable to Plaintiff.

(ECF 70 at 29).

D. Plaintiff's Arguments

Plaintiff claims he is entitled to summary judgment on the administrative exhaustion issue

because he was unable to exhaust his administrative remedies. More specifically, Plaintiff asserts

those remedies were rendered "unavailable" to him. Plaintiff relies at least in part on the October

29, 2016 grievance to argue there was nothing for him to appeal at that time since the response

indicated that he would be interviewed – thereby indicating an ongoing investigation.

---

[2] The Court presumes this is a typo. In the previous sentence, as noted above, Moving
Defendants noted that prison staff changed Plaintiff's form "from a grievance to an inquiry,"
which the record confirms.

Plaintiff next relies on his November 17, 2016 administrative filing to show that the administrative remedy process was rendered "unavailable." To reiterate, Koch initially responded on that administrative filing by asking Plaintiff, "who did you assault?" When Plaintiff responded naming the officers who assaulted him, Koch responded that the investigation was ongoing. Plaintiff states Koch's clear lack of knowledge about the incident underscores that the administrative remedy process was effectively rendered "unavailable." (*See* ECF 81-1 at 11).

Plaintiff also challenges how NJSP handled his November 20, 2016 administrative filing. More specifically, Plaintiff questions how NJSP could construe this filing as seeking an appeal of a disciplinary decision against him as opposed to seeking an appeal on his previously filed October 29, 2016 grievance related to the alleged use of excessive force. Additionally, he asserts NJSP's response was untimely. He also stresses that prison staff made additional misrepresentations when they told him he could not use the JPAY system for such claims. Plaintiff notes that this filing sought to "reappeal" any decision regarding the assault, but "Defendants do not explain how Mr. Nance was supposed to respond in the prior grievance when that grievance was simply closed without an investigation." (*See* ECF 81-1 at 14).

Plaintiff further argues administrative remedies were made "unavailable" by citing to his December 2, 2016 filing, which, like his November 20, 2016 filing, was unilaterally changed by prison staff to an inquiry. As previously noted, NJSP staff responded to that filing by simply stating "[i]nvestigation results are not disclosed." Thus, according to Plaintiff, he had nothing to appeal at that point thereby rendering his administrative remedies "unavailable."

Plaintiff also challenges Moving Defendants' argument that because he successfully appealed other grievances, he cannot show that administrative remedies were rendered "unavailable" to him with respect to his excessive force claims. Instead, Plaintiff argues that the

fact that he successfully appealed other grievances only means that administrative remedies were available "sometimes."

Finally, Plaintiff asserts that his December 26, 2016 grievance, which he appealed, establishes he exhausted administrative remedies on his excessive force claims.

E.   Analysis

For the reasons stated below, factual issues remain regarding whether Plaintiff can overcome any lack of administrative exhaustion by showing that administrative remedies were rendered "unavailable." Thus, both motions for summary judgment will be denied. An evidentiary hearing will be scheduled to resolve the remaining factual issues outlined *infra*.

Under NJSP's administrative remedy scheme, an appeal from a response to an administrative *grievance* is necessary to exhaust administrative remedies.[3] The only *grievances* in this record that were appealed by Plaintiff related to his request for medical care and a paralegal, dated December 26, 2016 and March 6, 2017, respectively. Plaintiff though argues this Court should deem his excessive force claims administratively exhausted because Plaintiff appealed his December 26, 2016 grievance relating to medical care. However, for the reasons that follow, the Court finds that the December 26, 2016 grievance did not act to administratively exhaust the excessive force claims raised in this action.

_____

[3] The Court previously expressed concern regarding the lack of clarity provided to inmates on how they *appeal* a grievance using the electronic JPAY kiosk as opposed to when they use a paper form. (*See* ECF 61 at 5-6). The record, however, indicates that Plaintiff was able to navigate and successfully appeal at least two grievances using the electronic JPAY kiosk near the time he sought administrative relief for the purported assault giving rise to his excessive force claims in this action. Thus, this Court finds, at least in this instance, and with respect to this Plaintiff only, that the administrative remedy scheme related to appealing grievances using the electronic JPAY kiosk was not "opaque." *See, e.g., Britton v. Errington,* No. 19-840, 2021 WL 909616, at *5 (S.D. Miss. Jan. 13, 2021) (noting administrative remedy system was not opaque where plaintiff successfully exhausted one grievance and knew enough about the system to voluntarily withdrawal one grievance to allow another one to go forward), *report and recommendation adopted by,* 2021 WL 493409 (S.D. Miss. Feb. 10, 2021).

The Third Circuit has not addressed the level of specificity required for an administrative grievance to cover the issue raised in a civil complaint, however, it has noted that "[t]he primary purpose of a grievance is to alert prison officials to a problem." *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007); *see also Jones v. United States*, No. 18-13943, 2022 WL 1830777, at *4 (D.N.J. June 3, 2022).   Other courts in this district though have adopted a standard "that a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *See Olivares v. United States,* No. 07–3476, 2010 WL 5251429, at *4 (D.N.J. Dec. 16, 2010) (citing *Griffin v. Arpaio,* 557 F.3d 1117 (9th Cir. 2009) (quoting *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002))); *see also Perez v. Turner,* No. 11–6833, 2013 WL 3216147, at *7 (D.N.J. June 25, 2013); *Nestor v. Dir. Ne. Region Bureau of Prisons,* No. 11–4683, 2012 WL 6691791, at *8 (D.N.J. Dec. 20, 2012).

Neither of Plaintiff's grievances that he appealed - request for medical attention (December 26, 2016 grievance) and request for a paralegal (March 6, 2017 grievance) sufficiently alerted NJSP to the wrong for which redress is sought in this action, namely the use of excessive force by correctional officers.   Neither appealed grievance indicated that Plaintiff had been assaulted by correctional officers to put NJSP on sufficient notice regarding his claim for use of excessive force. Thus, these two exhausted administrative grievances do not satisfy Plaintiff's exhaustion requirement on his claims for excessive force. *See Johnson v. Woodford,* No. 04–5995, 2010 WL 4007308, at *4 (C.D. Cal. Apr. 20, 2010) (citation omitted) ("Where one set of facts and circumstances gives rise to more than one potential claim, the plaintiff cannot exhaust all of the potential claims by merely exhausting one such claim.").   Given the two cited above grievances

by Plaintiff are the only ones that Plaintiff appealed, Plaintiff must show that administrative remedies were made "unavailable" to him.[4]

As previously noted, the United States Supreme Court has identified three specific circumstances in which a grievance process is rendered unavailable, including when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. The Supreme Court has not, however, "explicitly defined what qualifies as a 'misrepresentation' that thwart[s] inmates from taking advantage of the grievance process." *Hardy v. Shaikh*, 959 F.3d 578, 586 (3d Cir. 2020) (internal quotation marks and citation omitted).

In *Hardy*, the Third Circuit adopted a two-part test to determine whether prison officials thwarted an inmate's use of the grievance process. More specifically, *Hardy* held as follows:

> As an objective matter, taking account of the speaker and context, the instruction must be of the sort that a reasonable inmate would be "entitled to rely on," even though it is "at odds with the wording" of the grievance process. *Brown* [*v. Croak*], 312 F.3d [109,] 112 [(3d Cir. 2002)]; *see also Davis* [*v. Fernandez*, 798 F.3d 290, 296 (5th Cir. 2015)] (finding "no reason that [the inmate] should not be entitled to rely on the representations of his jailers"). It also must be so misleading to a reasonable inmate as to interfere with his use of the grievance process[.]
>
> As a subjective matter, the inmate must persuade the district court that he in fact did rely on the misrepresentation to his detriment. As in the threat context, *Rinaldi* [*v. United States*], 904 F.3d [257,] 268-69 [(3d Cir. 2018)], objectively misleading instructions can be circumstantial evidence that an inmate's use of the grievance process

---

[4] Plaintiff argued that his November 20, 2016 administrative filing exhausted his administrative remedies because he did not receive a response until thirty-two days after the filing, or, according to Plaintiff, two days after the thirty-day response time noted in the inmate handbook. In support of this argument, Plaintiff cites to *Hannah v. Wagner*, No. 17-8066, 2020 WL 1864575, at *2-4 (D.N.J. Apr. 14, 2020) and *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 155 (3d Cir. 2016). Plaintiff's untimeliness argument is misplaced. While this Court, as explained *infra*, takes significant exception with NJSP staff's unilateral move to reclassify this administrative filing by Plaintiff as an "inquiry" rather than a "grievance," NJSP's administrative remedy procedure provides for exhaustion of grievances that are appealed, not inquiries.

> has been thwarted, but a further showing—such as "documents, affidavits, or live testimony if deemed warranted," *id.* at 269—will typically be required. And in any event, that circumstantial evidence can be overcome by evidence that an inmate actually knew how to navigate the grievance process despite the misleading instructions. *Id.*; *cf. Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("When a prisoner has no means of verifying prison officials' claims about the administrative grievance process, incorrect statements by officials may indeed make remedies unavailable.").

*Hardy*, 959 F.3d at 587-88.

The Court finds Plaintiff has satisfied *Hardy*'s objective prong. When Plaintiff filed his initial grievance on October 29, 2016 related to the alleged assault, he was told the matter would be investigated. A subsequent inquiry in November 2017 then resulted in a response that the investigation was still "ongoing." Based on prison officials' statements to Plaintiff regarding an ongoing administrative action, a reasonable inmate could have concluded that no further action was required to pursue his grievance.

In many respects, whether administrative exhaustion was rendered "unavailable" in this case is similar to *Freeman v. Wetzel*, No. 17-1506, 2020 WL 6730897 (W.D. Pa. Aug. 6, 2020), *report and recommendation adopted by*, 2020 WL 5362050 (W.D. Pa. Sept. 8, 2020). *Freeman* involved an attack of the plaintiff in his cell at the hands of inmates, but the attack was purportedly the result of a correctional officer's actions. *See Freeman*, 2020 WL 6730897, at *1. Defendants moved for summary judgment arguing in part a lack of administrative exhaustion on Freeman's part for his failure to file an appeal of his grievance. Plaintiff claimed that based on responses to his grievances, administrative remedies were made "unavailable" to him. In finding that Plaintiff had satisfied *Hardy*'s objective prong, the Western District of Pennsylvania stated as follows:

> [a]pplying [*Hardy*'s objective] test to the evidence in this case, the Court finds that Plaintiff satisfies the first, objective prong. Here, prison officials engaged in representations that were "sufficiently misleading" to interfere with a reasonable inmate's use of the

grievance process." See id. When Plaintiff filed a grievance
regarding the attack, he was informed in response that four entities
were already investigating this incident. ECF No. 65-1 at 22.
Thereafter, Plaintiff was repeatedly advised by DOC officials that
the investigation remained ongoing. ECF No. 71-1 ¶ 5. On March
28, 2016, Plaintiff received a letter from OSII notifying him that,
while the investigation had since concluded, "further administrative
action will be taken." ECF No. 65-8 at 15. Based on the DOC's
representations regarding ongoing administrative action in response
to the attack, a reasonable inmate could have concluded that no
further action was required to pursue his grievance – particularly
given that Plaintiff was not notified of his right or obligation to file
an appeal in any of these communications. Because these
representations came from DOC officials, moreover, a reasonable
inmate would be entitled to rely on the information provided.
Accordingly, Plaintiff satisfies the first prong of [the *Hardy*] test.

*Freeman*, 2020 WL 6730897, at *10.

Like the plaintiff in *Freeman*, Plaintiff was told on at least two occasions in response to
administrative filings that the investigation into the purported assault on him by correctional
officers was ongoing. Additionally, when Plaintiff sought further clarification on his investigation,
he was told that the results of the investigation could not be disclosed. Furthermore, and even
more troubling to this Court, prison officials unilaterally changed Plaintiff's grievances seeking an
update as to the status of the investigation to "inquiries." Based on NJSP's Inmate Remedy
System, these newly minted inquiries, no matter the response, could not then be used by Plaintiff
to exhaust his administrative remedies as only an appeal of a *grievance* would suffice. The
unilateral change of Plaintiff's administrative filings from grievances to inquiries further support
a finding that any further exhaustion process was rendered "unavailable."[5]   Under these

---

[5] While this Court makes no judgment on whether these unilateral changes *may* have been
nefarious, it certainly put additional and unnecessary roadblocks in front of Plaintiff for him to
exhaust his administrative remedies as only an appeal of a *grievance* could exhaust his
administrative remedies.

circumstances, this Court finds that Plaintiff has sufficiently established *Hardy*'s objective prong to render his administrative remedies "unavailable."

Moving Defendants reliance on *Baker v. Camarillo*, No. 17-12095, 2022 WL 1963714 (D.N.J. June 6, 2022) to counter any unavailability argument is unavailing. In *Baker*, the plaintiff, also incarcerated at NJSP, did not dispute that he failed to file a grievance form. *See id.* at *7. Plaintiff though argued that he did not know about NJSP's grievance procedure. *See id.* However, the court noted that Plaintiff submitted seven inquiry forms, which demonstrated that Plaintiff was aware and had access to NJSP's inmate remedy system. *See id.* To the extent that Baker asserted that the grievance procedure was unavailable to him, the court in *Baker* noted that this was belied by Plaintiff's use of the system seven times during the relevant period. *See id.*

*Baker*'s underlying factual scenario is different than this case. In this case, Plaintiff is asserting that administrative remedies were made "unavailable" based on the responses and how NJSP handled his administrative filings, not that he was unaware of the system in general. Overall, *Freeman* is much more persuasive and relevant than *Baker* on this point.

Having determined that Plaintiff made the required objective showing, Plaintiff also needs to satisfy the subjective prong as set forth in *Hardy*. For the reasons that follow, Plaintiff has not satisfied this subjective prong.

*Freeman* is instructive as to what is needed to establish *Hardy*'s subjective prong. In *Freeman*, the Western District of Pennsylvania found that Freeman had satisfied *Hardy*'s subjective prong stating as follows:

> The evidence also satisfies the second, subjective prong. In his affidavit, Plaintiff asserts that he was actually misled by the DOC's representations. Plaintiff states that the OSII letter confused him by indicating that further action would be taken and he was "under the impression that he did not have to file an appeal." ECF No. 74-1 at ¶¶ 6-7.

*Freeman*, 2020 WL 6730897, at *10.

Plaintiff, through counsel, submitted a declaration in this case. (*See* ECF 81-13). The declaration, however, fails to provide evidence that Plaintiff did in fact subjectively rely on the responses and machinations of prison officials to his detriment in making administrative remedies "unavailable." *See Hardy*, 959 F.3d at 588. Unlike the affidavit in *Freeman*, the record in this case lacks the necessary evidence to establish *Hardy*'s subjective prong.

In *Hardy*, the Third Circuit noted live testimony may be required to determine whether a Plaintiff has established the subjective prong. To help expedite this matter, an evidentiary hearing will be scheduled. The evidentiary hearing will also allow this Court to make any credibility determinations should that become necessary.

## V.    CONCLUSION

For the foregoing reasons, Moving Defendants motion for summary judgment is denied and Plaintiff's cross-motion for summary judgment is denied. An evidentiary hearing shall be scheduled in due course to resolve the remaining issues related to whether administrative exhaustion should be deemed "unavailable" to Plaintiff as outlined in this Opinion. An appropriate order will be entered.

DATED: October 25th, 2022

GEORGETTE CASTNER
United States District Judge